IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE MARTINEZ,

    Plaintiff,                    No. CIV S-10-0366 GGH P

    vs.

EVERETT W. FISCHER, et al.,

    Defendants.               ORDER

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  This action is before the undersigned pursuant to both parties consent.  Docs. 6, 14. Pending before the court is defendants' motion for summary judgment, filed April 15, 2011. Doc. 27.  Plaintiff filed an opposition on June 17, 2011, and defendants' filed a reply on June 23, 2011.  Plaintiff alleges that defendants violated his Sixth, Eighth and Fourteenth Amendment rights when plaintiff was validated as a gang member and placed in Administrative Segregation (Ad. Seg.).

II. Motion for Summary Judgment

        Legal Standard for Summary Judgment

        Summary judgment is appropriate when it is demonstrated that there exists "no

1

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On April 30, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

3

F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

The above advice would, however, seem to be unnecessary as the Ninth Circuit has held that procedural requirements applied to ordinary litigants at summary judgment do not apply to prisoner pro se litigants. In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and ... avoid applying summary judgment rules strictly." Id. at 1150. No example or further definition of "liberal" construction or "too strict" application of rules was given in Ponder suggesting that any jurist would know inherently when to dispense with the wording of rules. Since the application of any rule which results in adverse consequences to the pro se inmate could always be construed in hindsight as not liberal enough a construction, or too strict an application, it appears that only the essentials of summary judgment, i.e., declarations or testimony under oath, and presentation of evidence not grossly at odds with rules of evidence, apply.

Undisputed Facts

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

At all relevant times, plaintiff was incarcerated at High Desert State Prison (HDSP). DUF #1. Prior to being incarcerated, plaintiff belonged to a street gang known as "Sangra" and his alias was "Cartoon". DUF #2.

In January 2007, defendant Spalding was assigned to investigate plaintiff's possible involvement in a prison gang. DUF #3. During a search of the cell that plaintiff shared with another prisoner, Spalding discovered the names, CDCR identification numbers and addresses of two validated associates of the Mexican Mafia (EME) prison gang. DUF #4. Spalding discovered this information in two personal dictionaries and one book titled "The Art of

Mesoamerica". Plaintiff's Complaint (Compl.) at 19.[1] The gang member names were altered or located among the pages of the books in an effort to conceal them. DUF # 5. Spalding stated the books belong to plaintiff. Id.

A search of plaintiff's property revealed numerous papers with symbols used by the Mexican Mafia. DUF #9. These symbols included the Mayan symbol for the number thirteen and the letter "M" and objects drawn that resemble the letter "M". Id. One of the papers contained the Mayan symbol for the number thirteen, signed with the name of plaintiff's street gang and his street gang alias. DUF #10.

On January 16, 2007, plaintiff participated in a mass disturbance on C-yard, where Southern Hispanics covered their windows to prevent staff from observing into the cells. DUF #12. This resulted in several forceful cell extractions including plaintiff. Id. On January 17, 2007, plaintiff was placed in Ad. Seg. pending the investigation into his affiliation with the Mexican Mafia. DUF #15. On January 29, 2007, plaintiff was issued a disciplinary report for his participation in the mass disturbance and resulting forcible cell extraction. DUF #16. Plaintiff was later found guilty of the charges in the disciplinary report. Id.

During another search of plaintiff's cell, two birthday cards were discovered that contained symbols. DUF #17. One of the birthday cards contained a picture and drawn on the picture was the Mayan symbol for thirteen. Id. The card stated "To the Homee Cartoon Happy Birthday", and was signed from "The Cisko Kid", who was identified as another inmate. Id. The second birthday card was signed by numerous individuals who used their street gang aliases followed by Mayan symbols. DUF #18. Several of the individuals who signed their names were identified as current or former inmates. Id.

On February 2, 2007, Spalding prepared a confidential chrono outlining the information that demonstrated plaintiff's involvement in the gang. DUF #21. Included in this

---

[1] The page numbers refer to the pages numbers on the court's electronic filing system.

chrono was information from a confidential informant who admitted being part of the Mexican Mafia and identified plaintiff as a member. Id. This information was provided on August 26, 2004. Id. Another informant provided information on October 18, 2004, where he incriminated himself in criminal activity and again identified plaintiff as a member of the prison gang. DUF #23. Four other confidential informants also provided information that plaintiff was a member of the Mexican Mafia. DUFs # 24-27. The informants provided the information from 2005 through 2006. Id.

On February 13, 2007, Spalding prepared a validation interview notification and disclosure form and served it on plaintiff. DUF #29. Spalding informed plaintiff that the forms were to validate him as an associate of the Mexican Mafia. DUF #30. Spalding asked plaintiff if he wanted to be interviewed but plaintiff refused. Id.

On February 14, 2007, Spalding returned to plaintiff's cell to interview him regarding the validation and allow plaintiff to refute the information. DUF #31. Plaintiff refused to participate. Id.; Opposition to Summary Judgment (Opposition) at 10. However, plaintiff did prepare a five page written rebuttal but refused to make any additional comments. DUF #32; Opposition at 10; Motion for Summary Judgment (MSJ), Exh. C.

Spalding submitted the validation package to the Office of Correction Safety. DUF #33. On March 14, 2007, defendant Fischer and other agents reviewed the validation package which included plaintiff's written rebuttal. DUF #35. Based on the evidence, plaintiff was validated as a gang member of the Mexican Mafia. DUF #38. In April 2009, plaintiff was transferred to Pelican Bay State Prison and placed in the Security Housing Unit. DUF #39.

Disputed Facts

Plaintiff generally questions the adequacy and reliability of the evidence used to validate him as a gang member.

With respect to the books that contained names and addresses of validated gang members, plaintiff argues that defendants did not conduct an investigation to discover if the

books belonged to plaintiff or his cellmate. Plaintiff does not state that the books did not belong to him, rather that defendants did not prove this during the gang validation process.[2] However, plaintiff was informed of the names of the books with the gang member names as it is written on a form provided to him that he supplied as an exhibit in his complaint. Compl. at 19.

Regarding the mass disturbance on C-yard on January 16, 2007, defendants allege it was involving Mexican Mafia prison gang members showing their allegiance to the prison gang. DUF #13. Plaintiff alleges that it was Southern Mexican inmates who by collective agreement were protesting their frustration towards prison officials. PUF at pg. 36.

Analysis

Due Process

The process constitutionally due to an inmate placed in segregation depends on whether the placement is disciplinary or administrative. Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986). In Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Ninth Circuit determined that California's policy of placing suspected gang members in segregation is an administrative decision, undertaken to preserve order in the prison. When an inmate is placed in segregation for administrative purposes, due process requires only the following procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.... [D]ue process [ ] does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

Toussaint, 801 F.2d at 1100-01 (footnote omitted).

Prisoners are entitled to the minimal procedural protections of adequate notice and an opportunity to be heard. Bruce, 351 F.3d at 1287. In addition to these minimal protections, there must be "some evidence" supporting the decision to place a prisoner in segregated housing.

---

[2] Some of the books in the cell had plaintiff's or his cellmate's names on it, while others had no names. It is not clear if the books in question had a name on them.

Id. (citing Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).

The "some evidence" standard sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d 1080, with respect to the minimal limitations). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." Id. at 1288; Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board" (citing Hill, 472 U.S. at 455-56 (emphases in original)).

In applying this standard the court is not required to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce, 351 F.3d at 1287 (citing Hill, 472 U.S. at 455-56).

Plaintiff has failed to allege the existence of any disputed facts that would demonstrate a violation of due process. Plaintiff is only entitled to a minimum amount of due process and he received all the due process that was required. It is undisputed that plaintiff was informed of the charges against him and the supporting evidence and he was provided an opportunity to present his views, all in a reasonable time. Plaintiff was afforded the opportunity to present his views, but plaintiff refused to be interviewed or participate, instead choosing to provide a written response. MSJ, Exh. C.[3] The facts in this case do not show a violation of due process.

Moreover, plaintiff does not challenge the due process provided, rather he challenges the sufficiency and reliability of the evidence. However, as stated above, the "some evidence" standard sets a low bar and the court need not examine the entire record. In the instant

---

[3] In his written response, plaintiff states that the use of the Mayan symbol for the number thirteen is a common number among Los Angeles street gangs, but not prison gangs.

case, there was more than sufficient evidence to validate plaintiff as a gang member, including the informant information and the property taken from plaintiff's cell. Even assuming arguendo that the books taken from the cell did not belong to plaintiff, there was sufficient personal correspondence to and from plaintiff to validate him as a gang member.

<u>Constitutionality of Gang Regulations</u>

Plaintiff also argues that 15 Cal. Code Regs. §§ 3378(c)(8)(B) and (G) are unconstitutionally vague and overbroad.

The focus of a claim for overbreadth is whether a regulation "sweeps within its prohibitions what may not be punished" under the Constitution. <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 115, 92 S.Ct. 2294 (1972). In the prison context, when regulations or policies are alleged to impinge upon an inmate's protected rights, subject to certain exceptions, the regulation has been analyzed under the test set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 107 S.Ct. 2254 (1987); <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying <u>Turner</u> test despite inmate's assertion that vagueness and overbreadth claims must be considered separate and apart from application of <u>Turner</u> test.)[4]

Under the <u>Turner</u> test, the court considers four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it, and the governmental objective must itself be a legitimate and neutral one. <u>Id</u>. at 89-90. A second consideration is whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates. <u>Id</u>. at 90. Where "other avenues" remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation. <u>Id</u>. A third consideration is the impact accommodation of the asserted right will have

---

[4] However, the undersigned has trouble fitting the <u>Turner</u> test, an analysis focused on the legitimacy of prison regulations, with an analysis focused on whether regulations are understandable.

on guards, other inmates, and the allocation of prison resources. Id. When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. Id. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Id. If an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Id. at 91.

Fifteen Cal. Code Regs. § 3378(c)(8)(G) states:

> Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

Plaintiff argues that this regulation restricting association is vague as it does not provide for prison officials to show that plaintiff was aware that other inmates were validated gang members. The objection, however, is not as to vagueness; plaintiff simply desires a new level of due process which would impose a scienter requirement on prison officials re-classifying a prisoner's security risk. However, such is not necessary at the administrative level as the prison officials only need show some evidence to warrant a gang classification. The prison officials document why they think a person is associated with gang members, and the affected person is permitted an attempt at rebutting same.

In Stewart v. Alamedia, 418 F. Supp.2d 1154 (N.D. Cal. 2006), the court held that 15 Cal. Code Regs. § 3378(c)(8)(D) was reasonably related to a valid penological interest. Id., at 1162-64. The regulation in Stewart, § 3378(c)(8)(D), provided that gang validation could be based on photographs of the accused inmate and other validated gang members, focusing on the association of gang members. The plaintiff in Stewart alleged that the prison's policy of validating an individual as a gang associate solely on the basis of "simple association" with other

validated gang associates violated his right to freely associate with others. The court concluded that "there is a valid, rational connection between institutional security and regulations designed to isolate threats before their potential is realized." 418 F.Supp.2d at 1163. The court further explained that "[t]his nexus is not destroyed by the possibility that inferences might sometimes be a necessary substitute for direct evidence that often will not be available until institutional security has already been compromised." Id.

The same analysis set forth by the court in Stewart that addressed the Turner factors applies in the instant case as § 3378(c)(8)(G) is related to and advances a legitimate penological interest. Plaintiff could reasonably know that other inmates signing a card using gang aliases followed by symbols associated with gangs could potentially be validated gang members. Simply pleading ignorance will not result in this regulation being held unconstitutional. Nor is plaintiff entitled to a list of all validated gang members at each prison. See Treglia v. Director of California Dept. of Corrections, 2010 WL 4905741 *5 (E.D. Cal. 2010).

Prison officials have an obvious need to maintain safety and security and prison gangs pose a dangerous risk. In Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384 (2005), the Supreme Court discussed the special problems posed by prison gangs:

> Clandestine, organized, fueled by race-based hostility, and committed to fear and violence as a means of disciplining their own members and their rivals, gangs seek nothing less than to control prison life * * *. Murder of an inmate [or] a guard * * * is a common form of gang discipline and control, as well as a condition for membership in some gangs. Testifying against, or otherwise informing on, gang activities can invite one's own death sentence. It is worth noting in this regard that for prison gang members serving life sentences, some without the possibility of parole, the deterrent effects of ordinary criminal punishment may be substantially diminished.

Id., at 227.

Prison officials are uniquely capable to deal with this problem and courts should not micro manage prisons and instruct officials on the proper manner of keeping an institution safe. "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does

1  not confer the power to manage prisons or the capacity to second-guess prison administrators, for
2  which we are ill-equipped." Bruce v. Ylst, 351 F.3d 1283, 1290 (9th Cir. 2003)
3        Fifteen Cal. Code Regs. § 3378(c)(8)(B) states:

> Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as being used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo or symbol is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

      Plaintiff essentially argues that this regulation is improper because he was not given notice what symbols are considered gang related and he had no way of knowing that the Mayan symbol for thirteen was gang related. The same analysis of the prior regulation applies to this regulation as well. With respect to the Turner factors, plaintiff is hard pressed in demonstrating that this regulation is vague or overbroad. Prison officials have a valid interest in preventing prison gang violence and this is not a situation where prison officials have overstepped their authority in identifying gang symbols. It is not as if defendants have scoured plaintiff's property and identified the words "the" or "and" and stated this is related to gang activity. The symbol in question it the Mayan symbol for thirteen which consists of several lines and dots and it is well documented as being related to a gang. Plaintiff pleading ignorance that this was a gang symbol will not counter defendants goal of maintaining a safe environment for all prisoners. Similarly, prison officials are also not responsible for informing inmates that the display of swastikas or the burning of a cross, could be considered problematic. Nor is plaintiff entitled to a list of all gang symbols and there is well documented caselaw on the use of this Mayan symbol as it relates to gangs. See Treglia v. Director of California Dept. of Corrections, 2010 WL 4905741 *5 (E.D. Cal. 2010); Ruiz v. Fischer, 2010 WL 4807052 *2 (N.D. Cal. 2010); Castro v. Horel, 2010 WL 1486470 *1 (N.D. Cal. 2010); Aquillon v. Evans, 2010 WL 2384861 *26 (C.D. Cal. 2010); Hernandez v. Horel, 2010 WL 1438936 *7 (C.D. Cal. 2010).

////

For all the reasons discussed above plaintiff has failed to show that the gang validation regulations are unconstitutionally vague or overboard and these claims are dismissed.

<u>Miscellaneous Claims</u>

Plaintiff's Sixth Amendment claim is frivolous as he is not entitled to counsel for a prison administrative decision. <u>See</u> <u>Bruce</u> at 1287. Similarly, there is no basis in plaintiff's complaint for an Eighth Amendment violation and this claim is also denied as meritless. To the extent plaintiff could be arguing that placement in Ad. Seg. violated the Eighth Amendment, he has provided no facts to support any such contention.[5]

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment (Doc. 27) be granted and this case closed.

DATED: September 27, 2011

       /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH: AB
mart0366.sj

---

[5] As the court has found that plaintiff's claims fail to allege any constitutional deprivation, the court need not address defendants' qualified immunity argument.